## George Lawrence *vs.* John L. Fletcher.

A company of Shakers formed themselves into a community, in 1791, as a religious society, and entered into covenant relations with each other, as a church, according to their peculiar faith and tenets: In 1801, they chose deacons and a clerk, and, by mutual agreement, under seal, appointed their deacons, and their successors in office, to hold the property of the church, and to have the management of its temporal concerns: In 1814 they remodelled their covenant, and thereby agreed on a new mode of appointing deacons, and denominated them "deacons or trustees," and continued to them the same powers as before, with respect to their temporal concerns; and this latter organization continued ever after. *Held,* that said company was an unincorporate religious society, and entitled by *St.* 1811, *c.* 6, § 3, to receive grants, and to manage the same, and to elect trustees, agents or officers therefor; and that an assignment of a mortgage, made to said company in 1830 was valid.

It is not necessary to the validity of a grant to an unincorporate religious society, that it should be made to the society, or to the deacons or trustees, by name. If it be made "to the trustees" of a society so clearly described as to distinguish it from all others, it is a valid grant.

*It seems* that the foreclosure of a mortgage may be opened, not only in the manner specified in the Rev. Sts. *c.* 107, § 33, but by an express agreement of the parties, or by facts and circumstances from which an agreement may be satisfactorily inferred.

BILL in equity to redeem eight square rods of mortgaged land situate in Littleton. It was alleged in the bill that the plaintiff, on the 21st of November 1826, conveyed said land, and also eleven acres of woodland, to Pliny Blanchard, by a deed of mortgage, to secure payment of a note of the same date, given by the plaintiff to said Blanchard, for the sum of $600, payable in three years, with interest : That said Blanchard afterwards, while he was lawful owner of said deed and note, by his deed duly executed and delivered, for a valuable consideration, released and quitclaimed said woodland to the plaintiff, on the plaintiff's paying to him $200 "towards and upon said mortgage deed and note;" and that the plaintiff, after making the aforesaid payment, also paid other sums to said Blanchard, on said note, while he was the owner thereof and of said mortgage deed : That said Blanchard, on the 24th of March 1840, by his deed of that date, conveyed all his interest in said eight square rods of land, and the building thereon, to Seth Blanchard, and Simon T. Atherton of Harvard in the county of Worcester, to have and to hold to them, and their heirs and assigns, forever; and that said Seth and Simon, on the 13th of April 1840, by their deed of that date, conveyed all their interest in said land and building, " acquired under and by virtue of the aforesaid deed of mortgage, and note and conveyance of the said Pliny Blanchard to them," to John L. Fletcher, the defendant, to hold to him, his heirs and assigns, forever : That the condition of said mortgage was broken before the aforesaid conveyance was made to said Seth and Simon ; that the note secured by said mortgage has not been fully paid ; and that the defendant entered upon said land, conveyed to him as above, on or about the day of said conveyance to him, and has ever since held and occupied the same : That the plaintiff did not know whether the defendant thus entered for

condition broken, or for the purpose of taking the rents and profits : That the plaintiff has the right in equity of redeeming said land, and desires to redeem the same ; and that he had, in order to tender and pay to the defendant the sum justly due on said mortgage deed and note, requested the defendant, on the 26th of March 1842, to render an account of the money due on said note, and of the rents and profits of said land so held by him, and of the money, if any, paid by him for taxes, repairs, &c. ; but that the defendant then and there refused so to do, and denied the plaintiff's right of redemption ; pretending that the said Pliny Blanchard, being seized of the premises sought to be redeemed, on the 30th of August 1830, by his deed of that date, transferred and assigned said mortgage and premises, and the note secured by said mortgage, to the " Trustees of the United Society in Harvard in the county of Worcester," to have and to hold to said trustees, and their successors in office forever, whereby said trustees became seized of said premises, in fee and in mortgage, and that they thereafterwards, on the 3d of April 1834, entered upon said mortgaged premises, for the purpose of foreclosure, and afterwards held and continued quiet possession thereof for the space of three years then next ensuing ; so that no interest in said premises was conveyed to said Seth and Simon by said Pliny, nor by said Seth and Simon to the defendant : That the plaintiff then and there denied and now denies, that there is or ever has been any body of men known in law as the Trustees of the United Society in Harvard, or that the said Pliny Blanchard ever made any such assignment of said deed of mortgage, or of said premises, or of said note, to said trustees, or that there was any such entry under any such assignment into said mortgaged premises, for the purpose of foreclosure ; or that said trustees ever held quiet and peaceable possession of said premises, under any such entry, for the purpose of foreclosure; or that said Seth and Simon conveyed to the defendant any interest in said premises ; or that the plaintiff's right of redemption is foreclosed : That after said pretended assignment and entry, and after the time when the defendant pretends that the plaintiff's right of redemption

was foreclosed, and before the conveyance of said Seth and Simon, and before they assumed to act as trustees as aforesaid, and before the 24th of March 1840, the plaintiff paid to Jonathan Chandler (who assumed to be one of said trustees, and to act in such capacity, and who then had said mortgage deed and note in his possession, and assumed to act as the lawfully authorized agent of such trustees and of said Pliny Blanchard, and all persons interested in said mortgage deed and note,) divers sums of money towards the principal and interest then due upon said note, and said Chandler then and there applied said sums in part payment and satisfaction of said mortgage deed and note ; whereby the plaintiff's right to redeem said mortgaged premises was prevented from being foreclosed by any such entry and holding of possession, as aforesaid, by such trustees, as was, and now is, pretended by the defendant.

Wherefore the plaintiff prayed that the defendant might answer, and render an account.

The *answer* of the defendant averred that on the 30th of August 1830, and for a long time before, there was, and still is, a body of men known in law as the Trustees of the United Society in Harvard, invested with full powers by law to receive, enter upon, hold, possess, and, for a valuable consideration, to convey personal and real estate ; that said Pliny Blanchard, being seized of the mortgaged premises, and being the lawful owner of said note, by his deed, made on said 30th of August 1830, for a valuable consideration, conveyed said mortgage, and the premises therein described, to the Trustees of the United Society in Harvard in the county of Worcester, and also at the same time assigned and delivered to them the note secured by said mortgage, to have and to hold said premises to said trustees, and their successors in office forever ; whereby said trustees became seized of said premises in fee and in mortgage ; and that they, after the condition of said mortgage was broken, viz. on the 3d of April 1834, made open and peaceable entry into said premises, by and with the consent of the plaintiff in writing on said mortgage, in the presence of two witnesses, expressed under the hand of the plaintiff, for the purpose of

foreclosing the plaintiff's right of redemption ; and said trustees, having entered for the purpose aforesaid, held and continued peaceable possession of said premises, for said purpose, for the space of three years next ensuing, and until the 30th of April 1840, whereby the plaintiff's right of redemption was forever foreclosed ; that said trustees, being thereto legally authorized, conveyed said eight square rods of land and the building thereon, by their deed made on said 30th of April, to the defendant, to have and to hold the same to him and his heirs and assigns forever, whereby he became seized thereof in fee and wholly discharged of all right of the plaintiff to redeem the same.

The defendant did not admit, in his answer, that Pliny Blanchard, while he was the lawful owner of said mortgage deed and note, released the woodland to the plaintiff, as alleged in the bill, or that the plaintiff paid $200, or any other sum, on said note ; but the defendant did admit, in his answer, that he was informed and advised, that on the 24th of March 1840, said Pliny conveyed all his interest in said eight square rods of land, and the building thereon, to Seth Blanchard and Simon T. Atherton, as alleged in the plaintiff's bill.

The plaintiff filed a general replication, and the case was submitted to the court on the bill and answer, and the following facts agreed by the parties :

" As early as 1791, a sect of Christians, denominated Shakers, formed themselves into a church and religious society, signed a covenant, and lived together in one community, in the town of Harvard ; consecrated their property to the church, according to the provisions of their covenant ; and worshipped together according to their peculiar faith. At a meeting of the church on the 2d of March 1801, they chose deacons and a clerk, and all the members, by a writing under their hands and seals, agreed, among other things, that the deacons and their successors in office should hold the property of said church and have the management of all its temporal concerns. On the 19th December 1814, the said church remodelled their covenant, and made it more full and formal, agreed upon a different mode o.

appointing deacons, and denominated them deacons or trustees, continuing to them the same powers and duties as before, in relation to their temporal concerns. Prior to August 30th 1830, the said church altered their covenant in some particulars, calling it the constitution or covenant of the church of the United Society in the town of Harvard, continuing to the deacons or trustees the same powers and duties as before; and in 1831 al. the members belonging to said church signed and sealed this covenant, a copy of which is to be produced at the hearing.

"This church has been, and still is, in possession of a large amount of property, real and personal, which has always been under the management of their trustees or deacons. On the 1st of January 1825, Pliny Blanchard was duly appointed trustee, with Nathaniel Robbins, who was then in office. Said Robbins having been discharged on the 20th of October 1828, Jonathan Chandler was appointed first trustee, and continued in that office until August 12th 1839, when he was discharged, and Seth Blanchard was appointed in his stead, and still continues in office. Pliny Blanchard continued in office until the 29th of August 1830, when he was discharged, and Hosea Winchester was appointed in his stead, and continued in office until the 3d of June 1835, when he was discharged, and Simon T. Atherton was appointed in his place, and continues still in office.

"On the 21st of November 1826, Pliny Blanchard lent to the said George Lawrence (the plaintiff) $600, of money belonging to said church, and took his note for the same secured by a mortgage, which note and mortgage are the same that are mentioned in the plaintiff's bill.

"On the 30th of August 1830, said Pliny Blanchard assigned said mortgage and note to the Trustees of the United Society in Harvard, and delivered the same to the persons then acting as trustees as aforesaid. On the 3d of April 1834, the said George Lawrence (the plaintiff) gave possession of said mortgaged premises to the said Jonathan Chandler and Hosea Winchester, who acted as trustees as aforesaid, for the purpose of foreclosing, and this in presence of two witnesses, and signed in writing on the back of said mortgage deed. On the 2d of May

1836, Jonathan Chandler executed a quitclaim deed of all his interest of the second parcel of land (the woodland) described in said mortgage, which quitclaim deed, for the purposes of this trial, is to be taken to have been duly acknowledged and recorded.

"Four receipts have been given by the said Jonathan Chandler to the plaintiff, for certain sums of money received by him of said plaintiff, viz. one of $24, dated May 3d 1837 ; one of $50, dated October 14th 1837 ; one of $25, dated November 21st 1837 ; and one of $20, dated August 1st 1839. The first of said receipts was expressed to have been 'for interest on a note' held by said Chandler against said Lawrence ; the second and third receipts were expressed to have been 'in part of a note' held by him against said Lawrence ; and in the third, the said Chandler promised 'to account for' the said $20.

"The note referred to in the three first of these receipts is the same note above mentioned as secured by said mortgage.

"The plaintiff, on the 10th of April 1840, having money, called on said Seth Blanchard, at Harvard, and requested him to state what was due on said note, and told him he was ready to redeem the premises. Said Blanchard informed him that they had sold the premises to John L. Fletcher, (the defendant,) and could do nothing about it. Lawrence then said to Blanchard, 'you have not given Fletcher a deed.' Blanchard replied, 'we have bargained for it.' Lawrence then asked him for a copy of the note, but Blanchard declined giving it. Then a meeting was appointed at Lawrence's house in Littleton, on the 15th of April 1840. Blanchard went there and said they had given Fletcher a deed and could do nothing about it. After the deed was given to Fletcher, and after the meeting at Lawrence's house, Lawrence called on Fletcher, who informed him that he had a warranty deed of the parcel of land first described in said mortgage.

"On the 24th of March 1840, Pliny Blanchard executed to Seth Blanchard and Simon T. Atherton, as trustees of the church of the United Society in Harvard, a quitclaim deed of all his interest in said mortgaged premises. And on the 13th of April

1840, said Seth Blanchard and Simon T. Atherton, as such trustees, conveyed the parcel of land first described in said mortgage deed, in fee, with warranty, to the said John L. Fletcher."

The argument was had at the last October term.

*B. Russell,* for the plaintiff. The assignment by Pliny Blanchard to the trustees was invalid. The society was not incorporated ; and unincorporated societies were not legally capable of receiving grants, until they were authorized by *St.* 1834, *c.* 183, which was passed several years after the execution of the assignment.

No individuals are named as assignees ; and the defendant cannot be permitted to show, by extrinsic evidence, that the assignment was intended to be made to the trustees of the church. And if such evidence were admissible, yet the assignment would not be valid, because no names are mentioned. A grant to the deacons of a church, without naming them, would be inoperative. *St.* 1785, *c.* 51, § 1. Rev. Sts. *c.* 20, § 29. Shep. Touch. 54. Bac. Ab. Grants, C.

If these objections do not prevail, yet it does not appear that any church exists in Harvard. The body claiming to be a church is not constituted according.to any usages shown to have been adopted by the sect of Shakers. It was self-constituted. As it is a known historical fact that this sect has existed in this country since the year 1776, it must be presumed to have some usages as to organization. And a conformity to those usages should be shown. *Christian Society* v. *Macomber,* 5 Met. 155. *Baker* v. *Fales,* 16 Mass. 488.

The plaintiff is not estopped to deny the capacity of the Shakers to take the assignment of the mortgage. *Todd* v. *Rome,* 2 Greenl. 55. *Dewey* v. *Field,* 4 Met. 381.

The payments made to Chandler, after the time when the defendant now says there was a foreclosure, show that there was a waiver, either of the entry to foreclose, or of the operation of the entry and possession. *Hatch* v *White,* 2 Gallis. 152. *Omaly* v. *Swan,* 3 Mason, 474. 3 Pow. Mortg. (Rand's ed.) 1002. The right of redemption was opened, whether the foreclosure was waived, or not.

The conveyance to the defendant by Blanchard and Atherton was inoperative, even if they were lawful deacons or trustees of a church known in law, because it does not appear that they made it with the consent of the church. Rev. Sts. *c.* 20, § 42.

*Farley,* for the defendant. The plaintiff has treated the society of Shakers as owners of the mortgage, and is in equity bound thereby, though he may not be thereby technically estopped. Besides; the society was an " unincorporate religious society," within the *St.* of 1811, *c.* 6, § 3, and capable of receiving and managing any grant made to it.

The equity was foreclosed in April 1837, under the provisions of *St.* 1785, *c.* 22, § 2, and no parol agreement made between the mortgagee and mortgagor could reconvey to the latter, or effectually waive the foreclosure. Chandler, being only one of the trustees, could not convey the mortgaged estate, even if he attempted to convey any thing more than his personal interest in the land.

In England, payment opens an equity of redemption, but it has never been so decided in Massachusetts. · By the Rev. Sts. *c.* 107, § 33, if a judgment be recovered by the mortgagee or his assignee, after foreclosure, for any part of the mortgage debt, on the ground that the value of the premises mortgaged was less than the mortgage debt, such recovery shall open the foreclosure. This is an implication that mere payment after foreclosure shall not have the same effect.

Chandler, acting without his co-trustee, could not receive money of the plaintiff, so as to open the foreclosure, even if it could be opened by the reception of money by the trustees.

The opinion of the court was delivered at Boston, January 30th 1845.

HUBBARD, J. The first question which arises in this case is as to the legal character and effect of Pliny Blanchard's deed, of August 30th 1830, to the trustees of the United Society in Harvard. It is contended by the plaintiff that the deed is wholly void, so that nothing passed by it; and for various reasons. 1st. Because there is not any body of men known in law as the

14 *

trustees of the United Society in Harvard, in the county of Worcester. 2d. Supposing the Shakers to be a church or religious society, still this was not a grant to the society of Shakers, or to the church, or to the deacons of a church. 3d. If intended to be made to the trustees of the church, still that will not give effect to the assignment, because they could not take as trustees, prior to the *St.* of 1834, *c.* 183, nor can the intent of the parties be proved by parol. 4th. That it cannot enure as a conveyance to the society, because the grantees are not named or described as deacons of the church, as required by the statute.

As to the company, it is argued that they are merely a voluntary association, not constituted into a religious society according to any known laws or usages of the Commonwealth ; and, consequently, the grant to trustees of such an association is void for want of a grantee capable of taking. It appears by the case, that as early as 1791 a company of persons, denominated Shakers, formed themselves into a community, in the town of Harvard, as a religious society, and entered into covenant relations with each other as a church, according to their peculiar faith and tenets : That as early as March 1801 they chose deacons and a clerk, and by mutual agreement, under seal, appointed their deacons, and their successors in office, to hold the property of the church, and to have the management of its temporal concerns : That in December 1814 they new modelled their covenant, making it more full and formal, and made a new arrangement in regard to the office of deacon, constituting a part family deacons, giving them the oversight of their domestic or internal concerns, and constituting other deacons, or trustees, to whom were committed the charge of their property and business with the world ; which society, in all its essential features, continues under the same organization to the present time.

We are satisfied that the Shakers are, within the meaning of the constitution, a sect or denomination of christians ; and, without considering as to the nature of their legal rights under *St.* 1785, *c.* 51, that they are embraced within the terms of *St.* 1811, *c.* 6, entitled " an act respecting public worship and

religious freedom," and from that time at least had full power to receive donations, gifts and grants, and to manage, improve and use the same, and to elect suitable trustees, agents or officers therefor ; and that they are equally within the purview of *St.* 1834, *c.* 183, and of the Rev. Sts. *c.* 20, § 25 ; and that, by force of *St.* 1811, *c.* 6, (if not legally empowered before,) they were authorized to elect deacons or trustees to take and hold and manage the property of the community.

In regard to the objection to the assignment of Pliny Blanchard, that it is neither made to the society *eo nomine,* nor to the deacons of the church, and that no effect is to be given to it, as made to trustees prior to the *St.* of 1834, *c.* 183, we are of opinion that it is not required, in order to give the assignment validity, that it should be made to the society by name, or to the deacons of the church ; but that it is sufficient, under *St.* 1811, *c.* 6, that it should be made to trustees of the society, who, as such, as well as their successors, are made capable of taking and holding property. Nor is it necessary, in order to give effect to the deed, that the trustees should be named. It is sufficient that they are so clearly described as to distinguish them from all others, so that there can be no uncertainty in the grant. *Hall* v. *Leonard,* 1 Pick. 30. *Shaw* v. *Loud,* 12 Mass. 447. It is admitted that Jonathan Chandler and Hosea Winchester were trustees of the society at this time, duly elected agreeably to their constitution and usages. And we are of opinion that the conveyance of the mortgaged premises to them, to hold upon the same conditions upon which they were conveyed to Blanchard, together with a delivery of the note and mortgage deed, was a good assignment of the mortgage ; and that the plaintiff so believed and acted is evident, from the possession he gave to them of the mortgaged premises, and the payments made by him to one of them, and the release he received of one parcel of the premises contained in his deed.

We are, on the whole, satisfied that the property passed by the deed of Blanchard to Chandler and Winchester, the trustees, and to their successors in office ; but, in respect to their successors, who were the grantors of the defendant, in order to remedy

any defect, if any existed, they procured a quitclaim of the premises from Pliny Blanchard to themselves, as trustees, by which they became possessed of his title, if it had not been passed to them by the former deed.

It being settled that the defendant is in possession under a valid conveyance, the next question is as to the nature of his estate. If he made any examination of the title when he purchased, he must have discovered that the trustees held it under a mortgage from the plaintiff, and that the right in equity to redeem it was not released on record. It may appear, therefore, that he has no better title than the trustees; and if they have not foreclosed the mortgage, then the plaintiff's title, perhaps, may not be affected by the grant to the defendant.

Assuming, then, that the trustees, Chandler and Winchester, were the assignees of the mortgaged premises, the next question is — did they foreclose the mortgage ? And as to this we have not facts enough to determine the point. The indorsement of April 3d 1834, on the mortgage, states that the plaintiff on that day gave to the assignees (Chandler and Winchester) quiet and full possession of the mortgaged premises, to be held by them from that date, for the purpose of foreclosing the mortgage. The *St.* of 1785, *c.* 22, which applies to this case, provides that all mortgaged estates may be redeemed, " unless the mortgagee, or person claiming under him, hath by process of law, or by open and peaceable entry, made in the presence of two witnesses, taken actual possession thereof, and continued that possession peaceably three years." On the facts, as now stated, it does not appear whether the trustees continued their possession after entry, either by themselves or their tenants ; or whether Law rence agreed to pay them rent, or to hold under them ; or whether, after their entry, they left the mortgagor in possession without further undertaking or agreement on his part. This is a question of fact to be determined upon the proofs.

If it should be settled that the mortgage was foreclosed, another question arises, to wit, whether the same was afterwards opened by the consent of the trustees. There are very few

Lawrence *v.* Fletcher.

adjudged cases on the subject of opening mortgages which have been once foreclosed; and we consider the question an open one in this Commonwealth.

That a foreclosure may be opened, after the three years have elapsed, by express agreement, or by facts and circumstances from which such an agreement may be satisfactorily inferred, where the parties choose to consider the property as a mere security for an existing debt, and where the rights of others have not intervened, we are inclined to admit. But it cannot be allowed where the facts, which are relied upon, are at all doubtful in their character, or where they may be explained consistently with the right of the mortgagees to retain the estate under the foreclosure. We are aware that the revised statutes make provision only in one instance for the opening of a foreclosure, after the time for redemption has expired. That case is this: Where the mortgagee, or person entitled to the debt secured by the mortgage, shall, after the foreclosure, " recover judgment for any part of the debt, on the ground that the value of the mortgaged premises, at the time of the foreclosure, was less than the sum due thereon, such recovery shall open the foreclosure, and the mortgagor, or the person claiming or hold-ing under him, may redeem the premises; provided his bill for redemption be brought within one year after the recovery of such judgment." Rev. Sts. *c.* 107, § 33. And it is argued, from that provision, that a foreclosure can be opened in no other case, and, if opened, the bill for redemption must be filed within one year after. It must be observed, however, in answer to this argument, that this statute provision relates to a case where the parties have rights secured to them by the express terms of the law. But the cases to which we have referred, where a foreclosure may perhaps be opened, and the mortga gor restored to his right of redemption, are those which result from the agreement of the parties, and not from statutory provisions.

In the case at bar, sundry payments have been made by the mortgagor since the three years after entry for condition broken have expired; admitting, for this purpose, that the pos-

session was continued by the mortgagees so as to perfect their right under their entry. But the value of the premises, at the time when the right of redemption expired, is not stated nor agreed upon ; nor does it appear whether the payments were made because the debt was not satisfied, and the party made them, in good faith, towards the payment of the balance of the debt, after crediting the value of the land, or whether they were made under an agreement to open the foreclosure. The only fact that clearly appears is that of payments, after the foreclosure, on account of the debt ; but this furnishes no satisfactory evidence of an agreement to open the foreclosure. To raise the question, therefore, the plaintiff must furnish other proofs of an agreement to open the mortgage ; for which purpose time will be allowed, as the case comes before us upon an imperfect statement of facts.

If, from either cause stated, there should appear to be a right of redemption in the plaintiff, then he will be compelled to amend his bill, and to introduce the parties who can state the amount of receipts and the sum due on the original note.

For the purpose, therefore, of deciding the points now in issue between the parties, it will be necessary to ascertain the facts in relation to the possession of the estate by the mortgagees, after the entry to foreclose, and the facts and circumstances in regard to the payments after the foreclosure was completed, and the value of the estate at the time the three years had expired, and also its value when the plaintiff offered to redeem, and to introduce the proper parties to the bill.